UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AHMED HELMI, TAMER ABDALLA,
KUMAR ARUN, and
YASER MOKHIMAR,

        Plaintiffs,

v.

SOLVAY PHARMACEUTICALS, INC.,
JAMES GRAYSON and NANCY SUTIN,
Jointly and Severally,

        Defendants.

_____/

Case No.: 5:05-CV-036

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This matter is before the court on "defendants' motion to strike plaintiff Ahmed Helmi's claim for emotional distress damages and any equitable relief" (docket no. 93).

### I.   Procedural History

On November 8, 2004, plaintiffs filed a complaint in the Eaton County Circuit Court, alleging claims of national origin discrimination and retaliation under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") and intentional infliction of emotional distress under Michigan law. The case was removed to this court on February 14, 2005.

On August 22, 2005, defendants served their First Interrogatories to plaintiff Ahmed Helmi ["plaintiff"]. Paragraph 13 of the interrogatories requested the following information from plaintiff:

> Please list every lawsuit and administrative agency proceeding to which you have been a party since you reached the age eighteen (18), including but not limited to claims for workers' compensation benefits,...charges filed with the Equal Employment Opportunity Commission ("EEOC"), and/or any legal proceedings for damages, divorce, or bankruptcy...

In his December 22, 2005 response, plaintiff replied that "[t]he Plaintiffs' [sic] have not filed or have been involved in any lawsuits or administrative agency proceedings, besides the case in question."

Plaintiff served two supplemental responses to the First Interrogatories on January 10, 2006 and March 2, 2006, which reiterated that

> Interrogatory 13 is not applicable.  Plaintiff Helmi has not filed or have [sic] been involved in any lawsuits or administrative agency proceedings, besides the case in question.

In their First Requests for Production of Documents (also dated August 22, 2005), defendants asked plaintiff to produce the following:

18. All documents that evidence, describe, or refer to your...employment by any person, business, or entity other than Solvay, including but not limited to documents that evidence, describe, or refer to...alleged claims of discrimination or unfair treatment...beginning five (5) years preceding the filing of this lawsuit through the date of trial of this action.

\*   \*   \*

21. All documents that evidence, describe, or refer to any lawsuit or administrative agency proceeding to which you have been a party, including but not limited to claims for workers' compensation benefits,...charges filed with the Equal Employment Opportunity Commission ("EEOC"), or any proceedings for bankruptcy or divorce.

Plaintiff did not make a timely response to this request.

Defendants subsequently deposed plaintiff on March 3, 2006.

On April 25, 2006, after the court granted defendants' motion to compel discovery (eight months after service of the request for production), plaintiff served his Supplemental Response to the request for Production of Documents.  In reference to items 18 and 21, plaintiff

stated:

> Plaintiffs' objection to this request as it is vague, over-burdensome, redundant, and requests irrelevant materials. Over this objection, plaintiffs state that they have to date produced all documents and other materials applicable that they have been able to locate and secure. A diligent search has and will continue to occur, and supplementation if necessary will occur. Plaintiffs have signed all requested authorizations for record, and identified during deposition questioning any other sources of documents or materials, which defendant may obtain.

Notwithstanding receipt of these responses, defendants subpoenaed records from Schering-Plough Corporation ["Schering"], the employer that hired plaintiff shortly after he resigned from Solvay Pharmaceuticals, Inc. ["Solvay"]. From these records, defendants discovered that plaintiff had filed a worker's compensation claim against Schering.

Plaintiff was deposed a second time on May 11, 2006, pursuant to the court's April 28, 2006 order (docket no. 77). During this second deposition, plaintiff admitted that he had initiated the worker's compensation claim, referring to it as a "stress claim." Defendants' contend that during this deposition, plaintiff admitted to participating in "other legal and administrative proceedings against Schering-Plough, including a charge of discrimination with the EEOC [Equal Employment Opportunity Commission] and a complaint with a DOJ [Department of Justice]." Defendants' brief at 5. The present motion was filed on June 16, 2006.

## II.    Factual background and deposition testimony

Plaintiff was hired at Solvay on February 21, 2000. On March, 19, 2004, plaintiff resigned from Solvay and soon began working at Schering. Exhibit 7. Plaintiff testified that he filed a claim with the DOJ against Schering, which was settled shortly thereafter. In November 2004, plaintiff filed a charge with the EEOC against Schering, but withdrew the charge after he settled the DOJ complaint. Helmi Dep (3/3/06) at 25. Plaintiff states that the confidential settlement agreement

3

between the DOJ and Schering also "ended any EEOC involvement." Helmi Aff. However, at his deposition, plaintiff testified that he withdrew the EEOC claim because of the filing of this suit. Plaintiff described the history of these claims in his first (March 3, 2006) deposition:

> Q. With respect to the Workers' – you filed a Workers' Comp claim?
> A. Yeah. And I filed with EEOC, Department of Justice, Michigan Works with EEOC and I did file EEOC against Solvay, but Mr. Scott Combs told me to stop it so he can pursue with his actions, advised me just to focus in one court at a time.
> Q. So you had filed an EEOC claim against Solvay?
> A. Yes.
> Q. And you withdrew that claim?
> A. Yes.
> Q. What documents?
> A. That the EEOC has.

Helmi Dep. (3/3/06) at 25. Plaintiff also explained his allegations in the EEOC claim:

> Q. What are the allegations in your EEOC charge against Schering-Plough?
> A. Same thing I told Schering-Plough, same thing I told the EEOC.
> Q. What is that?
> A. The discriminatory comments, labeling me as the crazy Egyptian, blah, blah, blah, et cetera. I think it's all in documents.
> Q. What documents?
> A. That the EEOC has.
> Q. Other than labeling you as a crazy Egyptian, were there any other comments made by Mr. Loberg [plaintiff's former supervisor]?
> A. Yeah, he made a comment to me when I was, I told him I need a day off to take my fingerprints, he said, yeah, they want to make sure you're not a middle eastern terrorist. That really offended me.

*Id.* at 35-6.

Plaintiff described the effects of the alleged discrimination he endured while employed at Schering:

> Q. What were your physical symptoms of stress?
> A. I've gone through the same thing, panic attacks and anxiety, the depression, heart rate, all the symptoms, I've gone through it all over again with severity because that was the second trauma for me.

4

>   Q. So they were more severe than ever when you were at Schering-Plough?
>   A. No, my symptoms were.
>   Q. Your symptoms were more severe than ever when you were at Schering-Plough?
>   A. Well, because the fact is, I was exposed to similar circumstances --
>   Q. But my question is: They were more severe than ever at Schering-Plough? Please just answer the question and I will follow up.
>   A. More or less.

*Id.* at 31-2.

Plaintiff claims that the American-Arab Anti-Discrimination Committee ("AAADC"), instructed him to contact the EEOC and acknowledges that he was represented by a lawyer from the EEOC in that case. Plaintiff states that "the [AAADC] simply informally contacted Schering-Plough" through a letter to the company's CEO but initiated no legal action against said company. The letter is Plaintiff's exhibit A attached to his supplemental response. In his response to defendants' motion, plaintiff maintains that "there was no suit, no investigation, and when the Department of Justice called [Schering], they simply agreed to the severance package with Mr. Helmi," precluding any legal action. Plaintiff's brief at 4. Plaintiff acknowledged the existence of the confidential settlement agreement throughout his deposition, but refused to disclose the agreed-upon amount absent a protective order obtained by the defense or permission from the company. Helmi Dep. (3/3/06) at 198-202.

On February 24, 2005 (eight days after this suit was removed to federal court), plaintiff filed a worker's compensation claim against Schering for stress caused by Mitch Loberg, plaintiff's supervisor from May 2004 to March 2005. Plaintiff also described this stress claim and the settled DOJ discrimination claim during his first deposition:

>   Q. Mr. Helmi, your testimony was that you didn't file a Complaint with the Department of Justice; is that correct?
>   A. I did.

Q. You did? Okay.
A. I'm trying to remember the whole story. Give me a chance.
Q. Just be patient with me for a minute, okay?
A. Okay.
Q. Let's you and I try to work this out.
A. All right
Q. My question was: Did you file a Complaint with the Department of Justice and you said no?
A. No, I said yes.
Q. Oh, you said yes, okay. Now, I understand that you may have taken other actions with regard to the Arab Association and some other agencies, but you've already answered my question, okay, you said that you filed the Complaint with the Department of Justice, all right?
A. On their behalf at the same time.
Q. Okay. So the Arab Association filed the Complaint for you; is that correct?

> MR. COMBS: Ma'am, you can't interrupt him. That's just all there is to it.

MS. IDALSKI:

Q. Just look at me and answer the question.

> MR. COMBS: Mr. Helmi, Mr. Helmi, all you have to do is answer the question.
> MS. IDALSKI: Your attorney has objected.
> MR. COMBS: You don't have to look at her, or anything, but when you're done, just signal her you're done so it's a fair game here. She can't cut you off midstream.

BY MS. IDALSKI:

Q. I'm not trying to be difficult, okay? My next question is: Were you represented by an attorney at the Department of Justice?
A. Okay. When the American Arab Institute instructed me to do two things at the same time, file the Complaint with the EEOC and they send me the paperwork to the Department of Justice a month later, I signed this and I did this, okay?
Q. Okay. Did you have an attorney represent you?
A. No, they had their own attorney.
Q. So you filled out the paperwork yourself and sent it to the National Arab Association?
A. Yes.
Q. Okay. And then they filed it for you?
A. No. They asked them under my behalf, so the lawyer from the Department

6

of Justice called me.
Q. Okay.
A. And they said, we're going to start investigations, that was right after I left. Schering-Plough got so frightened by the fact that the Department of Justice got involved –
Q. Okay. You've already answered my question. I understand. My question was: Did you file a Complaint with the Department of Justice?
A. I'm going to tell you what happened for the Department of Justice.
Q. It's my turn to ask a follow-up question. I know you want to get your story out, and you can do that through your attorney, he can ask follow-up questions at the end of the deposition if he wants to, okay? But my next question is going to be, and it will give you a chance to explain –

MR. COMBS: Maybe.

BY MS. IDALSKI:

Q. – what was your resolution with your Complaint with the Department of Justice?
A. The lawyer from Schering-Plough did not want to put up with the investigation from the Department of Justice, and contacted my lawyer, he says --
Q. Which lawyer?
A. Diane Carr, my family lawyer.
Q. So she was representing you with regard to the claim –
A. Just in communication. She did not represent me. She was just consultant. I used her as a consultant because of my medical conditions. I did not want to get involved with all this harassment.
Q. So how did it end, the Complaint with the Department of Justice?
A. Well, they simply said, we're going to settle with him, please don't investigate. And they did settle with me in October [2005].
Q. Did Schering-Plough settle with you in October?
A. Yes.
Q. And what, did you settle for a monetary amount?
A. This is completely confidential, I cannot share it with anyone. I did settle for some money but it wasn't much. I really didn't care. All I want to do is just make my point and that's it.
Q. Okay. So you settled your EEOC charge and your claim with the Department of Justice with Schering-Plough?
A. Everything was settled because they seek the settlement because the lawyer told me I cannot handle having federal agency in my company. Because she has told my lawyer that I don't have performance issues.
Q. Okay. But we're not going to get into all that. So then the -- your complaints against Schering-Plough with these various agencies have ended; is that

7

|    | correct? |
|----|----------|
| A. | Except for the stress claim. |
| Q. | Except for the Worker's Comp claim? |
| A. | Stress claim. |
| Q. | Okay. |
| A. | I did not want to settle it. I refused. |
| Q. | And things were so bad with respect to your manager Mitch Lowenberg [sic] that you filed a Workers' Comp claim; was that your testimony? |
| A. | I was trying to get someone's attention to hear me. |
| Q. | Well, is that your testimony? |
| A. | Yep. |
| Q. | That he stressed you out? |
| A. | I was trying to get someone to stop him because there was two reps in the same company filing a lawsuit against him because of his harassment. |
| Q. | But, just listen to my question. I understand. So as a result of that stress, the Workers' Compensation claim you said you suffered panic attacks; is that correct? |
| A. | Yes. |
| Q. | And you also suffered anxiety? |
| A. | Yes. |
| Q. | And you also suffered depression? |
| A. | Same symptoms I had from Solvay, same thing. I mean, I thought after leaving Solvay, I can get off the medications and I can be all happy again, and actually I was on my way to do that until he came back and I couldn't get off the medications because everything went back to square zero, the stress -- |
| Q. | Because of Mitch Loberg? Is it Lowenberg or Loberg? |
| A. | Loberg? |
| Q. | Okay. So you attribute your stress to Mitch Loberg? |
| A. | Yep. |

Helmi Dep. (3/3/06) at 148-52.

Defendants' counsel revisited plaintiff's claims against Schering during plaintiff's second deposition held on May 11, 2006:

> Q. Did you ever file a lawsuit in court or was one filed on your behalf against Schering-Plough?
>
> > MR. COMBS: Asked and answered. Go ahead and answer.
> > THE WITNESS [Plaintiff Helmi]: Yes. There is a work compensation claim.

8

BY MR. ARBERY:

Q. All right. And then there was an EEOC charge?
A. It's a complaint. Not a -- not -- not precisely a lawsuit.
Q. All right. And your workers' compensation complaint against Scherine-Plough [sic], does it involve allegations that you've suffered emotional distress or psychological problems as a result of something that Scherine-Plough [sic] did?
A. No. My boss did. I loved Scherine-Plough [sic]. I could have stayed there forever.
Q. Your boss at Scherine-Plough [sic]?
A. Yes. The one did not hire me. The one that came after him [Loberg]. Because I have tried every single avenue to stay in the company and all of my complaints, all of my requests have never been answered between asking for different jobs, between asking to be transferred, between asking to find resolutions, doing complaints. After I've exhausted all of the resources in the company with no answers to me I had to go to outside resources.

Helmi Dep. (5/11/06) at 202-03.

Plaintiff testified that he was "forced to resign" from Schering on March 21, 2005 because of the stress caused by the alleged discrimination. Helmi Dep. (3/3/06) at 34. Shortly thereafter, plaintiff was hired by Synthon Pharmaceuticals, Inc. ["Synthon"]. On October 18, 2005, plaintiff concluded his employment with Synthon, entering into a Release and Settlement Agreement, apparently for non-discriminatory reasons. In his brief, plaintiff states that he entered into this settlement agreement because Synthon was moving operations and he did not want to relocate to New York. Plaintiff's Brief at 5. Plaintiff testified that he does not recall being mistreated by anyone at Synthon and he has never made any claims or complaints against the company to that effect. Helmi Dep. (5/11/06) at 206-07.

### III. Violations of Fed. R. Civ. P. 26

Defendants contend that plaintiff violated the requirements of Fed. R. Civ. P. 26

because he failed to supplement his discovery responses.

Rule 26(e) provides in pertinent part that**:**

A party who...responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances: . . .

**(2)** A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Based on this record, the court concludes that plaintiff violated Rule 26(e)(2) by failing to disclose his involvement in the two administrative proceedings until his deposition. Moreover, while denying involvement in legal or administrative proceedings with respect to the DOJ and EEOC claims, plaintiff twice admitted during his depositions that he was a party to a worker's compensation claim against Schering. Plaintiff and his counsel "violated the most fundamental responsibility imposed upon a party engaged in discovery: to provide honest, truthful answers in the first place and to supplement or correct a previous disclosure when a party learns that its earlier disclosure was incomplete or incorrect." *Lebron v. Powell*, 217 F.R.D. 72, 76 (D.D.C. 2003).

### IV.     Rule 37 sanctions

Defendants seek both monetary and non-monetary sanctions pursuant to Fed. R. Civ. P. 37. Fed. R. Civ. P. 37(c)(1) provides that:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees,

caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Upon finding that plaintiff violated 26(e)(2), the court must determine whether this violation is excused because it was either substantially justified or harmless. Plaintiff, as the potentially sanctioned party, bears the burden of proving that the failure to amend a prior response was harmless. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

Plaintiff has not met his burden. Plaintiff's failure to correctly and completely respond to the discovery requests delayed defendants' ability to obtain additional discovery with respect to plaintiff's claim for emotional damages. While it appears that plaintiff may have not fully understood the legal system, his lack of understanding does not justify his violation. Plaintiff was aware of the DOJ complaint, the EEOC action and his worker's compensation claim against Schering. Furthermore, plaintiff had an attorney to assist him in providing accurate answers.

### A. Non-monetary sanctions

Defendants seek to strike or dismiss plaintiff's request for emotional damages, his claim for the intentional infliction of emotional distress and his claim for equitable relief. These sanctions are authorized by Fed. R. Civ. P. 37(b)(2)(C), which provides that the court may enter "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

District courts have wide discretion in fashioning a proper sanction for failure to conform to the rules of discovery. *Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005); *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643 (1976). However, the

sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery. *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993).

To determine whether a dismissal under Rule 37 is appropriate, the court should consider four factors:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997) (internal quotations omitted).

Defendants contend that they have been prejudiced in preparing a defense to this case and that the pleadings should be stricken so as to remedy such prejudice. However, they do not specifically point to the reasons why their case has been prejudiced, such as an inability to depose certain people or to obtain certain documents in a timely manner.

While much of the information in question had been made known to defendants prior to the close of discovery through plaintiff's March 3rd deposition, it came with only a month of discovery remaining, and then only through a direct examination of the plaintiff and subpoenaed records from Schering-Plough. If plaintiff had provided this information in his December 22, 2005 response to defendants' interrogatory, defendants would have had several weeks in which to conduct additional discovery based on the information (assuming the Workman's Compensation claim had been filed at that point).

Defendants did not have an opportunity to depose plaintiff a second time until after the close of discovery. From the deposition testimony provided to the court, it appears that the second deposition focused not on the existence of a pending lawsuit or other proceeding initiated

against Schering-Plough, but on the confidentiality of the Release and Settlement Agreement. Therefore, the delay incurred in completing plaintiff's deposition (after such proceedings were allegedly terminated prematurely in the first deposition) does not appear to have further prejudiced defendants.

Although defendants were delayed by plaintiff's violation, they nonetheless had time after March 3rd to conduct additional discovery regarding Schering-Plough's employment records, legal correspondence, and deposition testimony from its management and employees. Therefore, the prejudice to defendants has been somewhat mitigated.

Defendants also contend that plaintiff's intentional infliction of emotional distress claim and claims for equitable relief should be dismissed because of the egregiousness of plaintiff's conduct. Dismissal is not appropriate for this reason, nor is it proportionate to the wrong. Plaintiff's misconduct, for example, did not violate a court order, nor totally preclude discovery. *See Bluitt v. Arco Chemical Co.*, *a Div. of Atlantic Richfield Co.*, 777 F.2d 188 (5th Cir. 1985) (dismissal of sex discrimination case for willful or bad faith failure to comply with court's discovery orders was warranted because three times the court had ordered plaintiff to more fully answer defendant's interrogatories, plaintiff failed to fully or specifically answer the interrogatories, and trial court concluded that conduct of plaintiff and her attorney during the entire proceedings was evasive, contumacious and resulted at least in part from intentional misconduct); *Morgan v. Massachusetts General Hosp.*, 712 F.Supp. 242 (D.Mass.1989), *vacated in part on other grounds*, 901 F.2d 186 (1st Cir. 1990) (employment discrimination case properly dismissed as a sanction where plaintiff's counsel failed to timely and properly respond to written interrogatories and court orders, to produce documents in timely fashion, to timely claim a jury trial, to attend deposition, to attend and prosecute

13

plaintiff's own motion, and to cooperate as directed by court).

Under these circumstances, the court should impose a sanction less drastic than the dismissal of plaintiff's claims. Accordingly, I respectfully recommend that defendants' request for non-monetary sanctions be denied.

### B. Monetary sanctions

Although the harsh sanctions of striking pleadings or claims are not warranted in this case, alternative sanctions should be granted to deter similar conduct by plaintiff, as well as to compensate the defendants for their expenses in addressing plaintiff's conduct. Accordingly, I respectfully recommend plaintiff and his counsel pay a sanction in the amount $1,000.00. In addition, defendants should be awarded costs for bringing this motion in the amount of $1,500.00. I recommend these amounts should be paid within twenty-one (21) days. If either party disputes this latter amount, I recommend defendants be given ten (10) days to brief and document their actual expenses by affidavit, and plaintiff be given a like period to file an opposing brief.

### V. Rule 30 violation

Defendants next contend that plaintiff and his counsel are subject to sanctions for violating Fed. R. Civ. P. Rule 30 because counsel instructed plaintiff to refuse to respond to deposition questions regarding the terms of the settlement agreement with Schering. Defendants contend that there was no foundation for such an objection and that the proper course would have

been to formally object and then allow plaintiff to respond. Plaintiff's counsel maintains that his instruction was proper because the said agreement is privileged, being subject to a protective order.

Fed. R. Civ. P. 30(d)(1) provides that an attorney may instruct a deponent not to answer when it is "necessary to preserve a privilege." Fed. R. Civ. P. 30(d)(3) further provides that "[i]f the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof." To date, plaintiff's counsel has failed to provide a copy of the protective order.

I believe plaintiff's counsel should be required to present evidence showing the existence of the court order and its contents within seven (7) business days. If he fails to do so, defendants should be allowed to re-depose plaintiff, if desired, regarding plaintiff's severance from Schering and his settlement agreement with Schering only, at the expense of plaintiff's counsel. *See Plaisted v. Geisinger Med. Ctr*, 210 F.R.D. 527 (M.D. Pa. 2002) (plaintiff allowed to re-depose witnesses where defense counsel acted improperly during four depositions, by making repeated objections, instructing witnesses not to answer certain questions, and leaving the deposition room twice while questions were pending); *Cobell v. Norton*, 213 F.R.D. 16 (D.D.C. 2003) (sanctions against counsel, included reasonable expenses, attorney's fees, and opportunity for opposing counsel to re-depose his client, for repeatedly and groundlessly asserting privilege as a ground for instructing his client not to answer questions)

### VI.     Recommendation

I respectfully recommend that defendants' motion be **DENIED** with respect to their request to strike or dismiss claims, and **GRANTED** with respect to their request for monetary fees

and sanctions, and that these be in an amount of a $1,000.00 sanction against plaintiff and his counsel, and costs in the amount of $1,500.00. Plaintiff's counsel is also directed to provide defendants with a certified copy of the protective order regarding the settlement with Schering within seven (7) days of the approval of this report and recommendation upon penalty of defendants being entitled to re-depose plaintiff regarding his severance and any severance or settlement agreement from Schering only, at the expense of plaintiff's counsel.


Dated: October 12, 2006                     /s/ Hugh W. Brenneman, Jr.
                                            Hugh W. Brenneman, Jr.
                                            United States Magistrate Judge



ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).